UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDY BANDALA RAMOS, | : | CIVIL NO.: 1:20-CV-02415 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| *Acting Commissioner of* | : | |
| *Social Security*, | : | |
| | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## I. Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). Wendy Bandala Ramos ("Ramos") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income benefits. For the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while an action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 12-1 to 20.*[2]  On October 15, 2018, Ramos filed a Title XVI application for a period of disability and disability insurance benefits, alleging disability beginning on December 17, 2017. *Admin. Tr.* at 15.  The claim was denied initially on April 3, 2019. *Id.*  Ramos filed a request for hearing on May 6, 2019. *Id.*  The hearing was held on November 18, 2019. *Id.*  Following the initial denial of Ramos's claim, the case went before Administrative Law Judge Charles A. Dominick ("the ALJ"), who concluded that Ramos, represented by counsel, was not disabled, and he denied her benefits on that basis on January 16, 2020. *Id.* at 25.  Ramos requested review of the ALJ's decision before the Social Security Administration's Appeals Council, which denied her request on January 14, 2020. *Id.* at 1.

Ramos filed this action on December 23, 2020. *Doc. 1*.  The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 11-12.*  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was

---

[2] The facts of the case are well known to the parties and will not be repeated here.  Instead, we will recite only those facts that bear on Ramos's claims.

referred to the undersigned. *Doc. 8*. The parties then filed briefs, *see docs. 13, 14*, and this matter is ripe for decision.

**III. Legal Standards.**

    **A. Substantial Evidence Review—the Role of This Court.**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Ramos is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

4

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920. Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision Denying Ramos's Claim.

On January 16, 2020, the ALJ issued a decision denying Ramos benefits. *Admin. Tr.* at 12-25. The ALJ conducted the sequential evaluation process to determine whether Ramos was disabled. *Id.* at 17-25.

At step one of the sequential evaluation process, the ALJ found that Ramos has not engaged in substantial gainful activity since October 15, 2018, the application date. *Id.* at 17.

At step two of the sequential-evaluation process, the ALJ found that Ramos had severe impairments of post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), learning disorder, persistent depressive disorder, psychotic disorder, alcohol use disorder, fibromyalgia, diabetes mellitus, and obesity. *Id.*

At step three of the sequential evaluation process, the ALJ found that Ramos does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 18.

The ALJ fashioned an RFC, considering Ramos's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs, but can never crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant must avoid unprotected heights and dangerous moving machinery. She is limited to simple routine tasks, generally described as unskilled work, but not at a production rate pace. The claimant is limited to occupations that require no more than simple work related decisions with no more than occasional changes in work setting. She is also limited to occasional interaction with supervisors, coworkers, and the public.

*Id.* at 20.

In making this determination, the ALJ considered Ramos's mental and physical symptoms along with other medical evidence of record. *Id.* at 20-23. The ALJ found that Ramos's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id* at 21.

At step four of the sequential-evaluation process, the ALJ concluded that Ramos was unable to perform any past relevant work. *Id.* at 23

At step five of the sequential evaluation process, the ALJ found that "there are other jobs that exist in significant numbers in the national economy that the claimant can perform." *Id* at 24. In making this finding, the ALJ noted that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 25.

**V. Discussion.**

Ramos challenges the ALJ's decision based on the ALJ's evaluation of the medical opinions of record. In her statement of errors, Ramos argues: (1) that the ALJ improperly disregarded Ramos's substantiated complaints of pain; (2) that the

8

RFC formulated by the ALJ did not include all of the limitations applicable to Ramos; (3) that the ALJ failed to properly consider all of the evidence concerning the limitations caused by Ramos's mental health impairments; and (4) that the ALJ erred in failing to properly consider Ramos's obesity. *Doc. 13* at 10.

Because Ramos's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence. The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Ramos's, filed on or after March 27, 2017, on the other hand. Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to

evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather

than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

11

administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*.  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

### A. The ALJ erred in failing to consider Ramos's obesity in crafting the RFC.

In this case, at step two of the sequential evaluation process, the ALJ found that one of Ramos's medically determinable severe impairments was her obesity. *Admin. Tr.* at 17.  At step four of the sequential evaluation process, the ALJ makes no mention of Ramos's obesity in determining her RFC. *Id.* at 20-23.  Ramos essentially argues that the ALJ's evaluation of the limiting effects of her obesity compels remand in this case because it is too vague to permit judicial review.  This obligation originates in *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981).  In *Cotter* the Third Circuit recognized that there is "a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is

conflicting probative evidence in the record." *Id.* In defining the parameters of this obligation, the Circuit explained:

> [i]n our view and examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Id.* at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). In its opinion denying a rehearing in *Cotter*, the Circuit elaborated that "in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.

Ramos relies on *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009). In *Diaz*, the Third Circuit examined the decision to affirm the decision of the ALJ. *Id*. The district court held that "the ALJ's citation of reports by doctors who were aware of Diaz's obesity sufficed." *Id.* at 504. On appeal, the Third Circuit held that this conclusion was in error, reasoning that "absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." Accordingly, the case was remanded to the district court with instructions to remand to the Commissioner for further proceedings.

Here, in his opinion, although the ALJ may have made brief mention of Ramos's obesity (*Admin Tr. at 18)*, the ALJ provides no explanation, nor does he

13

cite to countervailing record evidence indicating that Ramos's obesity does not exacerbate her symptoms. The ALJ may have met his duty to survey the medical evidence. *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). But the ALJ has a further duty to provide an explanation of how the evidence serves as the basis for his RFC determination.[3] "[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." *Koshir v. Kijakazi*, No. 20-1441, 2022 WL 992529, at *4 (W.D. Pa. Mar. 31, 2022) (quoting *Fargnoli*, 247 F.3d at 41 (quoting *Cotter*, 642 F.2d at 705)) (internal quotation marks omitted). Here, the ALJ does not explain his reasoning for his determination that "[Ramos's] weight does not, either alone or in conjunction with other impairments, rise to the level of severity necessary to meet or equal a listing." *Admin. Tr.* at 18.

---

[3] *See Fargnoli*, 247 F.3d at 41 (quoting *Cotter*, 642 F.2d at 704) (An RFC determination must "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.' "); S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."); *Koshir*, 2022 WL 992529, at *6 (quoting *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citation omitted)) ("[T]he Court is unable to review the ALJ's findings where the ALJ failed to 'build an accurate and logical bridge between the evidence and the result.'").

Additionally, although the ALJ states that "the effects of [Ramos's] obesity were considered in assessing the claimant's residual functional capacity pursuant to Social Security Ruling 19-2p" (*id.*), the ALJ fails to explain how exactly this record evidence was considered.  Further, the ALJ, despite evidence existing in the record that indicates Ramos's symptoms are corroborated by her obesity (*Admin. Tr.* at 340), fails to cite to any countervailing evidence which supports a finding that Ramos's obesity should be discounted.  In the absence of such explanation, this Court is unable to determine how the ALJ evaluated the evidence of Ramos's obesity, limitations this obesity caused, and how the obesity factored into the RFC determination made by the ALJ.

This Court cannot find the absence of explanation harmless because the absence leaves the Court unable to review the decision.  This Court cannot make assumptions about how and why the ALJ decided the RFC; "it is not the role of the Court to look at the evidence and determine whether it would lead to the conclusions to which the ALJ came." *Koshir*, 2022 WL 992529, at *6 (citing *Fargnoli*, 247 F.3d at 44 n.7 ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting *SEC v. Chenery Corporation*, 318 U.S. 80, 87 (1943))).

Here, if the ALJ were to have considered and credited Ramos's assertions that her obesity would limit or preclude her from working, the ALJ may have

15

found that Ramos could not work. Because the ALJ did not provide an explanation of his consideration of the evidence related to Ramos's obesity for the RFC determination, this Court cannot review it.

Because the Commissioner's final decision lacks sufficient explanation of the RFC determination, this Court cannot determine whether substantial evidence supports the ALJ's RFC assessment nor whether the ALJ failed to properly evaluate Ramos's obesity. Accordingly, the Commissioner's final decision will be remanded so that the ALJ can more clearly explain how he arrived at his findings.

### B. Other Claims.

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's failure to articulate or consider Ramos's obesity, we will not address Ramos's remaining claims of error. "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020). "A remand may produce different results on these claims, making discussion of them moot." *Id*.

### C. Remand is the appropriate remedy.

Because the ALJ's decision is not support by substantial evidence, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to Ramos. We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same). But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22. Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019). "Thus, in practice any

decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of Ramos's claims, and we cannot say that substantial evidence on the record as a whole shows that Ramos is disabled and entitled to benefits. Thus, we will remand the case to the Commissioner for further proceedings.

## VI. Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order follows.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge